**OLD BEN COAL CORP., Plaintiff-Appellee,**

v.

**LOCAL UNION NO. 1487 OF UNITED MINE WORKERS OF AMERICA, Defendant-Appellant.**

No. 71–1243.

United States Court of Appeals, Seventh Circuit.

March 16, 1972.

Rehearing Denied April 14, 1972.

Duncan B. Cooper, III, William J. Voelker, Jr., Peoria, Ill., for defendant-appellant.

Roger Edgar, Veryl L. Riddle, St. Louis, Mo., for plaintiff-appellee; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

The district court permanently enjoined Local Union No. 1487 of the United Mine Workers of America (the Union) from engaging in any strike at certain mines of the Old Ben Coal Corporation (the Company) over the discharge of Eugene Dodd. The Union was also enjoined from engaging in any strikes over arbitrable grievances which might arise in the future during the term of the National Bituminous Coal Wage Agreement of 1968. The parties were ordered to submit disputes to adjustment as provided by the agreement.

The Company had discharged the employee for sleeping on the job. Because of this dismissal, the members of the Union walked off their jobs on several occasions. The district judge found that the strike over Dodd's dismissal was the thirteenth in a series of fourteen strikes that had occurred at the Company's mines since the effective date of the 1968 agreement. He also found that each of these strikes was over a dispute which both parties were contractually bound to arbitrate, that they had caused the Company irreparable harm, and that such strikes would continue unless enjoined. He therefore included in his decree a provision enjoining the Union from engaging in a strike over any future dispute subject to adjustment under the grievance procedures of the contract.

On this appeal, the Union challenges both the district court's authority to grant the injunction and the scope of the injunction.

### Authority of District Court to Grant the Injunction.

In Boys Markets v. Clerks Union,[1] the Supreme Court held that § 4 of the Norris-La Guardia Act[2] does not prohibit federal district courts from enjoining a strike which violates a no-strike obligation under a collective bargaining agreement providing for mandatory arbitration of the particular dispute. There was an explicit no-strike obligation in the agreement before the Court in Boys Markets, but one may also be implied from a provision compelling arbitration.[3]

The principal issue to be resolved upon this appeal is whether or not the National Bituminous Coal Wage Agreement of 1968 contains a mandatory arbitration provision with an attendant no-strike obligation. The Union asserts that the district judge erred in his finding that it did because: (1) the disputes settlement provisions of the contract which culminate with arbitration were not mandatory in that both parties were not contractually obligated to pursue them; and (2) a no-strike obligation cannot be implied from the terms of the 1968 wage agreement. We do not agree with either of these contentions.

■ The Union's contention that only the Union and not the Company was bound to arbitrate the dispute over Dodd's dismissal is at variance with the plain language of the collective agreement. Clause three of the "Miscellaneous" section of the agreement provides:

"3. The United Mine Workers of America and the *operators* agree and affirm . . . that all disputes and claims which are not settled by agreement *shall* be settled by the machinery provided in the 'Settlement of Local and District Disputes' section of this agreement unless national in character in which event the parties shall settle such dispute by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract provided and by collective bargaining without recourse to the courts." (Emphasis added.)

1.  398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

2.  29 U.S.C. § 104.

3.  Local 174, Teamsters, Chauffeurs Warehousemen & Helpers of America v. Lucas Flour Co., 369 U.S. 95, 105, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962).

Furthermore, the section of the agreement on "Settlement of Local and District Disputes" provides for a five-step grievance procedure which culminates in arbitration and a decision which "shall be final". A decision reached at any stage of the procedure "shall be binding on both parties . . . ."

In our opinion the language is not ambiguous and obliged both the Company and the Union to submit disputes such as the discharge of Dodd to arbitration unless settled at an earlier step of the grievance procedure.

The Union supports its second contention by reliance on the first clause in the "Miscellaneous" section of the agreement which expressly repealed any no-strike clause contained in the National Bituminous Coal Wage Agreement of 1945. Because of this, the Union argues that there can be no implication of a no-strike obligation as to matters subject to mandatory arbitration.

This provision reads:

"1. Any and all provisions in either the Appalachian Joint Wage Agreement of June 19, 1941, or the National Bituminous Coal Wage Agreement of April 11, 1945, containing any 'no strike' or 'penalty' clause or clauses or any clause denominated 'Illegal Suspension of Work' are hereby rescinded, cancelled, abrogated and made null and void."

The same provision has evidently been included in each successive agreement since 1947, and the question of its effect on the implication of an obligation not to strike over disputes which the agreement required to be submitted to arbitration has been considered in several cases. A no-strike obligation was deemed implied in Lewis v. Benedict Coal Corporation [4] and in Blue Diamond Coal Co. v. United Mine Workers of America.[5] The opposite conclusion was reached in International Union, United Mine Workers of America v. NLRB.[6] In the last named case, then Circuit Judge Burger dissented, saying in part:

"The majority opinion rests its reversal of the Labor Board action on the ground that the collective bargaining contract *does not* contain an affirmative 'no strike' clause, but it overlooks what the contract *does* contain, namely a solemn agreement by both parties to submit *all disputes* to an agreed process of negotiation leading finally to a binding arbitration if the preliminary steps are not successful. The mutual promises to settle all grievances by this peaceful process are plain and unambiguous, and this indeed is not disputed."[7]

We agree with the view that the provisions for arbitration of non-national disputes were mandatory and that there was *pro tanto* an obligation not to strike.

Moreover, *International Union* was decided prior to the Supreme Court's approval in Local 174, Teamsters etc. v. Lucas Flour Co.[8] of the principle that a "strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement." Mr. Justice Stewart, the author of the Court's opinion in *Lucas* had written for the 6th circuit in *Lewis*.

Implying a no-strike obligation in the 1968 agreement does not render the express abrogation of previous no-strike clauses meaningless as then Circuit Judge Stewart indicated in *Lewis*.[9] By virtue of that language, the Union has preserved the right to strike with respect to all disputes not subject to set-

4. 259 F.2d 346, 351 (6th Cir. 1958), affirmed on this point by an equally divided court, 361 U.S. 459, 464, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

5. 436 F.2d 551, 554 (6th Cir. 1970), cert. denied, 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863 (1971).

6. 103 U.S.App.D.C. 207, 257 F.2d 211, 218 (1958).

7. Id. at 218 (dissenting opinion).

8. *Supra*, note 3.

9. 259 F.2d 346, 351 (6th Cir. 1958).

tlement by other methods made exclusive by the agreement. In addition the language protects the Union from liability for spontaneous or "wildcat" strikes which would be the kind of work stoppages subject to the settlement procedures of the agreement.

### Scope of the Injunction.

 In *Boys Markets* [10] the Supreme Court stated:

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris LaGuardia Act. We deal only with the situation in which a collective-bargaining agreement contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance." [11]

The Court then went on to say that the ordinary principles of equity dictated that the facts and the circumstances of each individual case be examined to determine when injunctive relief is appropriate.

In deciding to issue a broad injunction, including any strike over future disputes subject to the mandatory arbitration procedures, the district court relied on the fact that there had been repetitive work stoppages over local disputes. Were it not for the cautious approach which the existence of the Norris-LaGuardia Act requires in this area, a broad injunction, making contempt remedies available as to future similar instances, may well have been within the sound discretion of the court. Perhaps a broad injunction would be appropriate in some future action should it appear that the Union is unwilling to accept the present adjudication with respect to its rights. In the present case, however, we think the policy of Norris-LaGuardia requires that the injunction should have been limited to the dispute before the court.

The judgment appealed from is therefore modified by vacating the second of the paragraphs which enjoins the defendant and the succeeding paragraph and by substituting a declaration that the 1968 agreement contains an obligation not to strike over disputes subject to the mandatory grievance adjustment procedure. As so modified, the judgment is affirmed.

---

10. *Supra*, note 1.

11. Id., at 253–254, 90 S.Ct. at 1594.