KABLE PRINTING COMPANY,
Plaintiff,

v.

DISTRICT LODGE NO. 101, INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO, et al., Defendants.

No. 73 C 7.

United States District Court,
N. D. Illinois, W. D.

May 25, 1973.

George P. Blake and Arthur B. Smith, Jr., of Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiff.

Carmel & Charone, Ltd., Chicago, Ill., for defendants.

## DECISION ON DEFENDANT'S MOTION TO DISMISS

McMILLEN, District Judge.

This cause comes on to be heard once again, this time on defendant's motion filed February 28, 1973 to dismiss the Complaint. Inasmuch as the defendant has filed an answer to the Complaint and both parties have filed affidavits in connection with this motion, it will be treated as one for summary judgment. Cf. F.R.Civ.P. 12(b)(6) and (c). For reasons previously expressed in this case and to be reiterated herein, we find and conclude that the Complaint cannot stand, and it follows that plaintiff's second motion for a temporary restraining order, filed March 22, 1973, will be denied.

The Complaint was filed under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) to enjoin an alleged strike called by the defendant union at the plaintiff's plant. It also seeks an order requiring the union to arbitrate the question of whether the alleged strike violates the collective bargaining agreement between the parties. No claim for damages for breach of contract are sought in the Complaint.

The grievance procedure which plaintiff seeks to enforce is set forth in the collective bargaining contract as follows:

## ARTICLE VI—GRIEVANCE PROCEDURE

SECTION 1: Should differences arise between the Company and its employees, either individually or collectively as to the meaning and application exclusively of the provisions of this Agreement an earnest effort shall be made to settle any such differences at the earliest possible time by use of the following procedure:

Step 1: An aggrieved employee shall present his grievance to his department foreman accompanied by his committeeman if he desires. If not resolved within one (1) working day to the satisfaction of the aggrieved employee, he may present the same in writing to his committeeman.

Step 2: The grievance may then be taken up with the department foreman, the maintenance superintendent and the committeeman. If a satisfactory solution is not reached within two (2) working days after receipt of the grievance from Step 1, it may be moved to Step 3.

Step 3: Upon receipt of the grievance in Step 3, it shall be discussed between the committeeman and Labor Relations Supervisor. Either party may request the Union's business representatives to participate in the settlement of the grievance.

If a satisfactory solution is not reached within five (5) working days after receipt of the grievance from Step 2, either party may request that the matter be referred to arbitration. The grievance must be submitted to arbitration within thirty (30) working days after a written answer is given in Step 3.

Step 4: If arbitration is requested by either party, the dispute shall be referred to a mutually acceptable arbiter who shall be selected by utilizing the procedures of the Federal Mediation Service.

The arbiter shall conduct a hearing as soon as possible and decide the dispute. The chairman (arbitrator) shall not be authorized or permitted hereunder to add to, subtract from or modify any provisions of this Agreement. The decision of the arbiter shall be final and binding on both parties to this Agreement.

\*　　\*　　\*　　\*　　\*　　\*

The Union agrees that during the life of this Agreement there shall be no strike on the part of the employees represented by it, and the Company agrees that during the life of this Agreement there shall be no lockout. It is understood, however, that any provision of this Agreement which in any way restricts the Union's right shall cease to be binding upon the Union ninety (90) days after notice has been served on the company for the following:

A. Negotiations for modification and/or termination or renewal of this Agreement resulting in no Agreement.

B. If the Company refuses to stipulate to the arbitration of a grievance not settled after the grievance procedure has been exhausted to the point of arbitration.

The Company agrees that the Union shall be under no liability for damage by reason of any strike, unless the strike has been actually sanctioned, actually authorized or actually directed by the Union according to the provisions of the Constitution of the Grand Lodge of the International Association of Machinists.

\*　　\*　　\*　　\*　　\*　　\*

In the event of an employee being discharged from employment and he

believes that he has been unjustly dealt with, such discharge shall constitute a case under the method of adjusting grievances herein provided. In the event that it should be decided through such grievance procedure that an injustice has been dealt the employee with regard to discharge, the Company shall reinstate such employee with full compensation at the employee's regular earned rate for time lost. Such cases of discharge shall be taken up within three (3) working days from the date of discharge.

The deficiency in plaintiff's case is that no "aggrieved employee" has filed a grievance to initiate the procedures contained in Article VI. Plaintiff would like to start the procedure at Step 4, but the contract is not subject to this interpretation. Step 4 is clearly dependent upon the failure to resolve a grievance under the second paragraph of Step 3, and no grievance has been filed. The plaintiff company has no right to file a grievance and has not attempted to do so. This court does not have the power to change or add to the agreement made by the parties, and no further proceedings are necessary to fully construe these provisions.

The decision in Boys Market Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) constitutes a carefully circumscribed exception to the Norris-La Guardia Act's prohibition of Federal injunctions against strikes (29 U.S.C. § 104). The court said at 398 U.S. 254, at 90 S.Ct. 1594:

. . . When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike.

Plaintiff rests its case primarily on Avco Corp. v. Local Union 787, etc., 459 F.2d 968 (3rd Cir. 1972). In this case a proper grievance had been processed and submitted to arbitration. The parties thereafter became engaged in a similar dispute which had not yet been reduced to a grievance. The Court of Appeals held that the trial court should have entertained the prayer for an injunction. Regardless of the soundness of this conclusion, we prefer to accept the authority of Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586 (2d Cir. 1971) to the effect that an injunction should not be issued unless a dispute exists which both parties are bound to arbitrate (449 F.2d at p. 591). Both of the two foregoing Court of Appeals decisions involved other issues, but they differ in their interpretation and application of Boys Market. We believe the holding of the Supreme Court speaks clearly and precludes relief on the Complaint in the case at bar.

The Seventh Circuit has expressed a similar application of Boys Market in Old Ben Coal Corp. v. Local 1487, etc., 457 F.2d 162 (1972). The court said at pp. 163–164:

The Union's contention that only the Union and not the Company was bound to arbitrate the dispute over Dodd's dismissal is at variance with the plain language of the collective agreement. Clause three of the "Miscellaneous" section of the agreement provides:

"3. The United Mine Workers of America and the *operators* agree and affirm . . . that all disputes and claims which are not settled by agreement *shall* be settled by the machinery provided in the 'Settlement of Local District Disputes' section of this agreement. . . ." (Emphasis added) [by Court of Appeals.]

Furthermore, the section of the agreement on "Settlement of Local and District Disputes" provides for a five-

step grievance procedure which culminates in arbitration and a decision which "shall be final". A decision reached at any stage of the procedure "shall be binding on both parties . . . ."

In our opinion the language is not ambiguous and obliged both the Company and the Union to submit disputes such as the discharge of Dodd to arbitration unless settled at an earlier step of the grievance procedure.

As we have said before, in passing, we believe that the Union's strike on February 9, 1973 was apparently a violation of the collective bargaining contract, even though the strike concerned negotiations under a separate agreement, the pension plan. The collective bargaining contract had been negotiated to be effective December 28, 1970, more than two years after the pension plan was negotiated, and the parties therefore had an opportunity to provide an exception in the no-strike clause had they seen fit to do so. They did not do so, so as to permit a strike during negotiations on the pension plan, and the court has no power to modify this provision of the contract either.

Shortly after the strike of February 9, 1973 the Union's members notified the company that they would no longer work "overtime" on Saturday or Sunday. The plaintiff's effort to enjoin this alleged boycott or partial strike can be no more successful than its effort to enjoin the earlier strike. The Union or the employees may or may not have been in violation of the collective bargaining contract, but there is no obligation to arbitrate this dispute in the absence of an employee's grievance.

With respect to this later phase of the controversy, the plaintiff relies on a letter from the defendant Union's business representative dated March 20, 1973, attached to the affidavit of the plaintiff's Labor Relations Supervisor filed April 12, 1973. Therein the Union's representative wrote, *inter alia:*

. . . the Union position is as follows:

Under the current Agreement the Pension Plan and the prohibition on the Union to strike over this issue ended on January 1, 1973. This overtime issue is not part of the Pension Plan dispute, the hours of work and overtime portion of the current Agreement are still in effect. Some time back, during contract negotiations, the Company asked for and received from the Union the right to file a grievance and submit to arbitration any dispute between the Company and the Union during the term of the Agreement. Since the hours of work and overtime provisions of the current Agreement are still in effect, unlike the Pension Plan and the Union's right to strike over the issue, the Company must submit this dispute to the Grievance Procedure and Arbitration before you can take any action on this matter.

Therefore it is the position of the Union that if the Company takes action against any of the I.A.M. members for refusal to work overtime the Union is then within its right to strike under Article VI, Section 4B., that is the Company has refused to stipulate to Arbitration the overtime dispute.

With respect to this letter, the affiant states (paragraph 14) that he has repeatedly requested the Union to arbitrate the "overtime" dispute and that the Union has "never responded directly to my request." The Union has filed no counter-affidavit, although it filed a reply memorandum on April 18, 1973 in support of its motion to dismiss. The Court finds and concludes that the Union's letter does not present a genuine issue of material fact with respect to the Complaint as filed on February 12, 1973. That Complaint does not involve the issue of overtime and is limited to the strike arising under the pension plan, before the subsequent dispute on

a different subject. The letter is not relevant to the pending Complaint.

It is therefore ordered, adjudged and decreed that summary judgment is entered on the Complaint in favor of the defendant.