**OLD BEN COAL CORPORATION, a corporation, Plaintiff-Appellee,**

v.

**LOCAL UNION NO. 1487 OF UNITED MINE WORKERS OF AMERICA, et al., Defendants-Appellants.**

### No. 73-2000.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1974.

Decided Aug. 2, 1974.

Joseph A. Yablonski, Lewis D. Sargentich, Washington, D. C., for defendants-appellants.

J. Roger Edgar, St. Louis, Mo., for plaintiff-appellee.

· Before CLARK,* Associate Justice, SWYGERT, Chief Judge, and CAMPBELL,** Senior District Judge.

SWYGERT, Chief Judge.

Defendants United Mine Workers of America, Local 1487 and four of its officers were enjoined by a permanent injunction from causing work stoppages and strikes at the Old Ben Coal Corporation Mine No. 26 by the district court. The injunction prohibits work stoppages and strikes resulting from any differences or local trouble which the parties are contractually obligated to arbitrate under the terms of their 1971 National Bituminous Coal Wage Agreement. The union appeals the propriety of the issuance and breadth of the order. We affirm.

. The record shows that the union on October 14, 1968 entered into a contractual agreement for employment with Old Ben under the 1968 National Bituminous Coal Wage Agreement. From March 25, 1969 through November 19, 1970 union members walked off their jobs fourteen times, causing operations at the mine to lose coal production in excess of fifty-five days. On August 8, 1970, as a result of a strike, Old Ben Coal sought and was granted a permanent injunction against further stoppages or strikes effective until the expiration of the 1968 Agreement. The union appealed this order in Old Ben Coal Corp. v. United Mine Workers Local 1487, 457 F.2d 162

* Associate Justice (Retired) Tom C. Clark of the Supreme Court of the United States is sitting by designation.

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

(7th Cir. 1972). (Hereinafter referred to as *Old Ben I.*) Prior to the decision in that appeal, the union and Old Ben Coal Corporation entered into a new contract, the 1971 National Bituminous Coal Wage Agreement. Union workers engaged in eleven strikes since the inception of the 1971 Agreement. Of these, three were prior to our decision in *Old Ben I.* On March 16, 1972 we affirmed the grant of an injunction in *Old Ben I,* but the scope of the injunction was narrowed to cover only the particular disputes before us. There were eight walk-outs following that decision, including one on October 19, 1972 over defendant Charles Swisher's discharge for refusal to change a flat tire on a roof bolting machine assigned to Swisher. Old Ben Coal sought and was granted a temporary injunction against the work stoppage on October 19, 1972. The defendants ignored the order until October 22, 1972 when, at a union meeting, it was decided that the employees should return to work the next day. On October 24, 1972 a hearing on Old Ben's request that the injunction be made permanent was held. On June 8, 1973, the injunction was made permanent, enjoining all work stoppages and strikes resulting from Swisher's discharge or from any other differences or local troubles which the parties were obligated to arbitrate under the 1971 Agreement. In challenging the issuance and breadth of the injunction the defendants raise the following issues: (1) it is claimed that the injunction issued by the district court is not justified by the evidence and district court's findings that the union flagrantly, repeatedly, and completely repudiated its contractual arbitration duty are clearly erroneous; and (2) it is contended that the injunction is overbroad in light of certain holdings of the United States Supreme Court and this court, the Norris-LaGuardia Act, and standard doctrines of equity, and applicable Federal Rules of Civil Procedure.

## I

Defendants argue that the district court justified the issuance of the permanent injunction on the basis of its finding that the union had a general policy of "resort to self help through strikes and work stoppages which were in violation of existing labor agreements." They claim that the judge should not have considered any strikes other than those of July 28, 1972 and October 19, 1972, because only these strikes occurred after the members of the union had a fair opportunity to appraise and to absorb the impact of *Old Ben I.* They attempt to substantiate this claim by stating that the other work stoppages preceded the order in *Old Ben I* or occurred within a month after the decision in *Old Ben I* and before the lesson of that case to the effect that the agreement did imply a no-strike duty could fully be brought home to them. Defendants contend that a mere two stoppages hardly indicate a pattern of persistent, continuing misconduct so as to justify the trial court's finding that the union is a chronic disregarder of its contractual duty to arbitrate.

■ We know of no rule which allows a union a grace period of immunity from an applicable prior court decision. The two strikes subsequent to our first decision are not the sole evidence of the union's attitude. The union was bound immediately by the order in *Old Ben I* and all violations of that order following its issuance are relevant. In light of the frequency of the work stoppages and of the nature of the disputes, most if not all of minor dimension, it is apparent that defendants have utilized the device of work stoppages with questionable motivation and little justification. We are far from convinced that without a permanent injunction similar conduct would not continue. We need not decide if two, four, or six strikes would render such an injunction appropriate for bare numbers are not necessarily an adequate measure.

The defendants also argue that by their very nature the stoppages of only one or two days duration should be viewed as wildcat strikes and as not subject to union control. This contention is without worth for the record amply re-

flects significant union involvement and control.

The defendants urge the availability of relief other than a permanent injunction, such as damages and disciplinary measures against the offending employees. We think that damages are inadequate since the coal production lost by such stoppages—not an inconsiderable amount—is lost forever. The record shows Old Ben sells its coal three years in advance and that the coal mining industry is currently working at full capacity. Once a day's production is lost it cannot be recovered. In addition to the plaintiff's loss of over 300,000 tons of coal production thus far (or $10,000 per day for each of these stoppages), its customers experience much hardship as a result of their reliance on the delivery of the coal which they have bought. Damages would be an inadequate remedy. With regard to disciplinary measures, prior efforts by Old Ben to discipline employees have provoked additional stoppages. Moreover there is difficulty in pinpointing individual responsibility in impetuous strikes. Resort to disciplinary measures is an inefficacious remedy. Accordingly we cannot agree that other avenues of relief short of a permanent injunction are available to Old Ben. As the Supreme Court stated in Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970): "An award of damages after a dispute has been settled is no substitute for an immediate halt to an illegal strike. Furthermore, an action for damages prosecuted during or after a labor dispute would only tend to aggravate industrial strife and delay an early resolution of the difficulties between the employer and union." In sum, we hold that findings of the district court are not clearly erroneous and that the injunction is justified by the evidence.

## II

Defendants also contend that the injunction is overly broad. They argue that an injunction of this breadth is unique and should not have been granted in light of the present case law. We do not agree. Our decision in *Old Ben I*, which was based on the *Boys Markets* interpretation of the Norris-LaGuardia Act, holds that the act does allow an injunction of this scope under the proper circumstances. In *Old Ben I* we admonished the union that: "Perhaps a broad injunction would be appropriate in some future action should it appear that the union is unwilling to accept the present adjudication with respect to its rights." We agree with the trial judge that the instant action is an appropriate one for application of our admonition.

The Norris-LaGuardia Act declares that the breadth of an injunction is to be determined by the extent of the misconduct. The decision in *Boys Markets* allows an injunction to be broad enough to aid the arbitration process between the parties, as they may be bound by their contract. Accordingly, there is a proper basis for the issuance of a broad injunction, given the appropriate facts. Here the union participated in or permitted numerous stoppages over arbitrable differences. Old Ben Coal has suffered heavy losses. Any remedy therefore less than a permanent injunction is inadequate. Also of great importance is the fact that the very terms of the injunction were framed from the language of the 1971 Agreement as adopted from the 1968 Agreement. As such the trial court's order incorporates the contractual language of the parties' own agreement.

Defendants claim that the injunction is too vague and not sufficiently specific. They argue that the union will not know when it can or cannot strike. In essence the union is claiming it does not know what differences or local troubles are arbitrable. We think the incorporation of the parties' own contractual language into the injunction is of sufficient specificity to avoid the complaint of vagueness. With respect to situations which are arguably within or without the arbitration clause, the union

would have access to declaratory remedies to avoid potential violations. The union also urges that they must carry the burden of possible criminal contempt for violations which are arguably within or without the arbitration clause. We think that proper consideration of circumstances of this nature will be given in any future contempt proceedings.

We affirm the permanent injunction granted by the district court.