**PEABODY COAL COMPANY, Plaintiff,**

v.

**LOCAL UNION NO. 1670, UNITED MINE WORKERS OF AMERICA, Defendant.**

**Civ. No. 753308.**

United States District Court, E. D. Illinois.

June 17, 1976.

---

John Ferguson, Belleville, Ill., and Harold I. Elbert, St. Louis, Mo., for plaintiff.

Thomas Gumbel, Edwardsville, Ill., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FOREMAN, District Judge.

This cause came on to be heard on May 27, 1976 on the Application of plaintiff for a permanent injunction on the Complaint and Supplemental Complaint filed herein and plaintiff having filed a Second Supplemental Complaint herein; that by paragraph 6 of a Stipulation and Agreement filed herein on May 27, 1976, plaintiff and defendant agreed that the Court would take this case subject to additional evidence to be submitted in the event of a strike or work stoppage subsequent to May 17, 1976 and that in the event of a strike or work stoppage at plaintiff's River King Underground Mine by Local 1670 and its members over an arbitrable issue of any kind, the Court may in its discretion enter a permanent pattern injunction as prayed in the Complaint and Supplemental Complaint herein and the plaintiff having filed a Second Supplemental Complaint herein, and the Court having heard the evidence on the Second Supplemental Complaint on June 16, 1976 and consolidated the trial on the Second Supplemental Complaint with the trial of the action for permanent injunction previously heard in part on May 27, 1976 on all issues, and the Court having heard the evidence on the Second Supplemental Complaint on June 16, 1976 and all parties having appeared with counsel and the Court being fully advised in the premises makes herewith its Findings of Fact and Conclusions of Law as follows:

### I

### FINDINGS OF FACT

1. Plaintiff is a corporation duly organized and existing under the laws of the State of Delaware and is engaged in commerce within the meaning of the Labor-Management Relations Act, as amended, 29 U.S.C., Sections 152(2) and (7).

2. Defendant Local Union No. 1670, United Mine Workers of America ("Local 1670") is an unincorporated labor organization duly chartered by International Union, United Mine Workers of America and represents employees in industries affecting commerce within the meaning of § 2(5) and § 2(7) of the LMRA, 29 U.S.C.A. 152(5) and (7).

3. On or about December 5, 1974, plaintiff and International Union, United Mine Workers of America ("International Union") representing the local union defendant above named and each individual member thereof executed and bound themselves to a collective bargaining agreement ("Con-

tract") entitled "National Bituminous Coal Wage Agreement of 1974", which at all times herein mentioned was and is in full force and effect, and binding as to the parties.

4. Defendant Local 1670 and each of its members authorized International Union to bargain for and on their behalf and they are bound by the terms of the Contract, be they beneficial or burdensome.

5. The Contract contains an Article for the Settlement of Disputes (Article XXIII) ("Grievance Procedure") which applies to all "differences between the Mine Workers and Employers as to the meaning and application of the provisions of this Agreement or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine an earnest effort shall be made to settle such differences at the earliest possible time; " that such Contract provides for a four step grievance procedure with the right to appeal to an Arbitration Review Board; that the final step of the grievance procedure is submission of the matter to a panel umpire; that his decision "shall be final"; with a right to appeal to the Arbitration Review Board which may make whatever changes are necessary to assure that the final decision correctly resolves all contractual issues.

6. The Contract contains a provision for the Settlement of Health and Safety Disputes (Article III Section (p)) that it provides that when a dispute arises at the mine involving health and safety an immediate, earnest and sincere effort shall be made to resolve the matter through the steps therein set forth and that the final step in such procedure is submission to a panel arbitrator pursuant to the Settlement of Disputes Procedure (Article XXIII Section (c) paragraph 4)) which is the same procedure set forth in the Settlement of Disputes Procedure and the decision of the panel umpire is final and subject to review by the Arbitration Review Board as set forth in paragraph 5 of the Findings of Fact and Conclusions of Law herein.

7. That the National Bituminous Coal Wage Agreement of 1968 contained an Article on Settlement of Local and District Disputes which was identical to the Article contained in the present Contract, except that the procedure for discharge cases was changed in the National Bituminous Coal Wage Agreement of 1971 by providing for a notice in contemplation of discharge and a hearing within a five day period and that if the matter was not resolved at that time it proceeded to the fourth step of the grievance procedure and then to final and binding arbitration.

8. That the National Bituminous Coal Wage Agreement of 1971 contained a provision for the Settlement of Health and Safety Disputes in which the decision of a panel selected by the parties was binding on the parties involved in the dispute.

9. That the National Bituminous Coal Wage Agreement of 1974 contains a Discharge Procedure (Article XXIV) providing for expedited arbitration of a discharge by a panel arbitrator's decision which is final or for handling the discharge through the Settlement of Disputes Procedure (Article XXIII) and in each instance the decision of the panel arbitrator is final subject to review as set forth in paragraph 5 hereof.

10. Plaintiff operates a mine known as the River King Underground Mine in St. Clair County, Illinois, which is within the jurisdiction of this court. Defendant Local 1670 represents plaintiff's hourly employees at said mine.

11. On June 3, 1976, at approximately 5:15 a.m., Dennis Eggemeyer, a buggy runner, was asked to take roof bolt wrenches to a roof bolt drill in that section of the River King Underground Mine; that at approximately 5:25 a.m., Dennis Eggemeyer claimed that he was ill and asked for a ride out of the mine; that face boss, Carl Wheatley, and Vern Edwards, the Mine Manager, arranged to take him out of the mine because he claimed to be ill; that Dennis Eggemeyer asked for a mine committeeman; that Vern Edwards did not call a mine committeemen because he was tak-

ing Dennis Eggemeyer out of the mine and because he did not intend to discipline Dennis Eggemeyer; that subsequently the Union, defendant, claimed that face boss, Carl Wheatley and Vern Edwards, the Mine Manager, had harassed Dennis Eggemeyer, and that the Mine Manager, Vern Edwards, questioned Dennis Eggemeyer about being sick on his way out of the mine.

12. Commencing at 12:01 a.m. on June 4, 1976, defendant, Local Union 1670, commenced a work stoppage over the claim that Carl Wheatley, the face boss, and Vern Edwards, the Mine Manager, had harassed Dennis Eggemeyer in taking him out of the mine; that Vern Edwards, the Mine Manager, had questioned him about being ill when they were leaving the mine; that Dennis Eggemeyer had not been given a mine committeeman; that Charles Moake, the Mine Superintendent, talked to Dennis Eggemeyer in the bathhouse and that Dennis Eggemeyer did not ask for a mine committeeman at that time and that at the time the strike and work stoppage commenced, plaintiff had not taken any disciplinary action against Dennis Eggemeyer.

13. That defendant, Local 1670, and persons acting in concert with it engaged in said strike and work stoppage in violation of said Grievance Procedure at plaintiff's River King Underground Mine over the grievance of Dennis Eggemeyer heretofore mentioned.

14. That the dispute in question is not national in character and plaintiff is willing to submit said grievance to the Grievance Procedure of the Contract, and that plaintiff is ready, willing and able to arbitrate said dispute.

15. That coal was first produced at said River King Underground Mine in May 1970.

16. That between April 19, 1971 and the expiration of the National Bituminous Coal Wage Agreement of 1971, defendant engaged in three strikes at said River King Underground Mine over matters which were subject to the Settlement of Disputes Procedure of the National Contract and to arbitration as follows:

| Strike Commenced | | Work Resumed | | |
| Date | Time | Date | Time | Reason |
| --- | --- | --- | --- | --- |
| 4/19/71 | 8:00 a.m. | 4/20/71 | 8:00 a.m. | Strike over job award outside of seniority because most senior employee was not qualified. |
| 5/12/71 | 12:01 a.m. | 5/14/71 | 12:01 a.m. | Dispute because an operator was changed from one unit to another and refusal of man to work for boss. |
| 7/15/71 | 12:01 a.m. | 7/15/71 | 8:00 a.m. | Dispute because Company hired a shuttle car operator without posting the job. |

17. That since the effective date of the National Bituminous Coal Wage Agreement of 1971, defendant has been enjoined from engaging in strikes over arbitrable grievances involving the Settlement of Disputes Procedure, the Settlement of Health and Safety Disputes Procedure and the Discharge Procedure at River King Underground Mine as follows:

| Strike Commenced | | Work Resumed | | |
|---|---|---|---|---|
| Date | Time | Date | Time | Reason |
| 3/27/72 Civil No. 72–42–E | 12:01 p.m. | 3/28/72 | 12:01 p.m. | Dispute over a notice in contemplation of discharge given to Terry Sullivan and plaintiff's refusal to set aside the possible discharge of Terry Sullivan, who was subsequently discharged. |
| 7/31/72 Civil No. 72–123–E | 12:01 p.m. | 8/ 3/72 | 12:01 p.m. | Dispute over shift rotation. |
| 11/21/72 Civil No. 72–236–D | 4:15 p.m. | 11/29/72 | 4:00 p.m. | Dispute over Richard Davison breaking the crystal of his lamp and plaintiff informing him that he would be given a notice in contemplation of discharge. |
| 2/22/73 Civil No. 72–27–E | 12:01 p.m. | 2/23/73 | 12:01 p.m. | Strike over job bid, employee wanted old job back. |
| 3/ 7/73 Civil No. 73–32–E | 8:00 a.m. | 3/ 9/73 | 12:01 a.m. | Dispute involving claim of certain of plaintiff's employees for a full day's pay for February 21 and February 24, 1973 on the 4:00 p.m. to 12:00 p.m. shift. |
| 8/13/73 Civil No. 72–53–D | 4:00 p.m. | 8/14/73 | 4:00 p.m. | Dispute over notice in contemplation of discharge of Daryll Melvin. |
| 11/15/73 Civil No. 73–278–E | 8:00 a.m. | 11/19/73 | 8:00 a.m. | Dispute over refusal to cross picket line because of pickets from Midland Coal Company. |

18. That since the effective date of the National Bituminous Coal Wage Agreement of 1971, defendant has engaged in strikes over disputes involving the Settlement of Disputes Procedure, Discharge Procedure and cases involving the Settlement of Health and Safety Disputes Procedure of the National Bituminous Coal Wage Agreement of 1971 over which suits were not filed and which were subject to arbitration as follows:

| Strike Commenced | | Work Resumed | | |
|---|---|---|---|---|
| Date | Time | Date | Time | Reason |
| 12/29/71 | 12:01 a.m. | 12/29/71 | 4:00 p.m. | Dispute over hiring a new employee and not awarding job to employee who had not been on the payroll for six months |

| Strike Commenced | | Work Resumed | | Reason |
|---|---|---|---|---|
| Date | Time | Date | Time | |
| 8/17/72 | 12:01 p.m. | 8/23/72 | 8:00 p.m. | Dispute over refusal to cross picket line of persons employed by Association of Bituminous Contractors |
| 11/14/72 | 8:00 a.m. | 11/15/72 | 12:01 a.m. | Refusal to cross picket line established by employees of Peabody's Midwest Mine |
| 12/15/72 | 4:00 p.m. | 12/20/72 | 4:00 p.m. | Sympathy strike and refusal to cross picket line because of pickets from plaintiff's Eagle No. 1, Eagle No. 2 Underground Mines over discharge of Ronnie Marvel and Vicki Aud |
| 6/27/73 | 12:01 p.m. | 6/28/73 | 12:01 a.m. | Dispute over motorman's bid. |
| 7/11/73 | 12:01 a.m. | 7/13/73 | 8:00 a.m. | Dispute involving pickets at River King tipple |
| 8/10/73 | 8:00 a.m. | 8/11/73 | 8:00 a.m. | Dispute over umpire's decision on shift pay |
| 10/ 3/73 | 12:01 p.m. | 10/13/73 | 12:01 a.m. | Dispute over claim that Ernest Bovinette was unsafe to work with (this dispute was settled by an agreement under which the union returned to work pending arbitration) |
| 2/ 1/74 | 8:30 a.m. | 2/ 4/74 | 8:00 a.m. | Dispute that employees who worked other than their regular classifed jobs during the week should not be given overtime (idle work) in their regular job classification |
| 4/10/74 | 4:00 p.m. | 4/11/74 | 4:00 p.m. | Dispute over posting of job bid for position of supplyman with the Union claiming that the job should be called dispatcher with a higher rate of pay |
| 4/17/74 | 12:01 p.m. | 4/18/74 | 12:01 a.m. | Dispute over four hour's reporting pay |
| 7/29/74 | 12:01 a.m. | 7/30/74 | 12:01 a.m. | Dispute over awarding job to Delmar Oats because he bid another shift before a year had expired |

| Strike Commenced | | Work Resumed | | Reason |
|---|---|---|---|---|
| Date | Time | Date | Time | |
| 10/ 3/74 | 4:10 p.m. | 10/ 4/74 | 4:00 p.m. | Dispute over tracklayer job being bid on by employees of equal seniority where both employees who bid were employed on the same date |
| 10/24/74 | 8:00 a.m. | 10/25/74 | 8:00 a.m. | Dispute over Lonnie K. Kennedy ordering parts and being paid mine operators wages where Kennedy asked to be removed from job on miner but did not want to give up operator's rate of pay to work as bottom supply man |
| 11/ 1/74 | 4:00 p.m. | 11/ 2/74 | 4:00 p.m. | Dispute over whether John Laird should have been paid three and one-half hours overtime at beltmans pay where company needed a Beltman and used an employee other than Laird |
| 11/ 6/74 | 4:00 p.m. | 11/ 7/74 | 4:00 p.m. | Dispute because Roger Papproth, a Motorman, on the B shift examined the mine on November 2, 1974, while the men were still on strike and C. W. Powell, a Classified Mine Examiner claimed the shift |

19. Since the signing of the present National Contract, defendant has resorted to strikes at plaintiff's River King Underground Mine in violation of the Grievance Procedure and Settlement of Health and Safety Disputes Procedure to settle disputes which were subject to arbitration and which have been enjoined by the court as follows:

| Strike Commenced | | Work Resumed | | Reason |
|---|---|---|---|---|
| Date | Time | Date | Time | |
| 12/ 7/74 Civil No. 74–263–E | 12:01 a.m. | 12/11/74 | 12:01 a.m. | Dispute over refusal to cross picket lines of employees of Association of Bituminous Contractors |
| 12/16/74 Civil No. 74–266–E | 12:01 a.m. | 12/19/74 | 8:00 a.m. | Dispute over refusal to cross picket lines of employees of Association of Bituminous Contractors |
| 5/ 2/75 Civil No. 75–3114–E | 4:01 p.m. | 5/ 5/75 | 8:01 a.m. | Dispute over Roger Taylor's demand for overtime pay- |

| Strike Commenced | | Work Resumed | | Reason |
|---|---|---|---|---|
| Date | Time | Date | Time | |
| | | | | ment for lunch hour and the claim that company worked J. D. Kinstler, a buggy runner, in accompanying Allen Shelton, a repairman, on April 29 and 30, 1975 instead of assigning overtime work to a repairman |
| 8/19/75 Civil No. 75–4–091 | 4:01 p.m. | 9/ 2/75 | 12:01 a.m. | UMWA employees on strike over shift rotation and sympathy with Murdock |
| 12/15/75 | 12:01 a.m. | 12/18/75 | 12:01 a.m. | Dispute involving the claim that plaintiff should have awarded the jobs of motorman and miner operator which it posted on December 3, 1975 to William Campbell and Jim Bennett respectively |
| 4/15/76 Civil No. 76–3090 | 8:01 a.m. | 4/15/76 | 4:00 p.m. | Dispute over William King, a scoop operator, running over a mining machine cable and a bolter cable with the machine he was operating |

21. Since the signing of the National Bituminous Coal Wage Agreement of 1974, defendant has resorted to strikes at plaintiff's River King Underground Mine in violation of the Settlement of Disputes Procedure of said contract over disputes that were subject to arbitration and over which plaintiff did not file suit as follows:

| Strike Commenced | | Work Resumed | | |
|---|---|---|---|---|
| Date | Time | Date | Time | Reason |
| 1/16/75 | 12:01 a.m. | 1/17/75 | 12:01 a.m. | Dispute over vacation schedule |
| 1/27/75 | 12:01 a.m. | 1/28/75 | 12:01 a.m. | Dispute involving job bidding |
| 6/13/75 | 4:01 p.m. | 6/14/75 | 4:01 p.m. | Dispute over repairman job posted 6–9–75. 8 bids received but not accepted because they were not qualified |
| 10/30/75 | 8:01 a.m. | 10/30/75 | 4:01 p.m. | Dispute over job posting |

22. Defendant has engaged in thirty-seven (37) strikes and work stoppages over arbitrable issues since River King Underground Mine was opened for the production of coal to the present time.

23. That during the term of the National Bituminous Coal Wage Agreement of 1974, defendant has engaged in ten strikes over arbitrable issues prior to the instant case; that it has been enjoined on six sepa-

rate occasions prior to the instant case for strikes in violation of the National Bituminous Coal Wage Agreement of 1974 and that it was enjoined seven times over arbitrable issues during the term of the National Bituminous Coal Wage Agreement of 1971, and that as a result of the strike on August 19, 1975 heretofore mentioned, it was held in contempt and fined Five Hundred Dollars ($500.00) a day; that with respect to the strike of December 15, 1975, defendant, after service of the temporary restraining order on it, and after everyone had returned to work for one day, again commenced a strike and work stoppage over the same issue.

24. That the acts of defendant Local 1670 in striking are willful and deliberate and in total disregard of its obligation to pursue the Grievance Procedure and Settlement of Health and Safety Disputes and Discharge Procedure of the National Bituminous Coal Wage Agreement of 1974.

25. That the dispute in the Second Supplemental Complaint over the claim that Carl Wheatley, a face boss, and Vern Edwards, a Mine Manager, harassed Dennis Eggemeyer and that Vern Edwards questioned Dennis Eggemeyer about his being sick on his way out of the mine and the defense raised by defendant that plaintiff had agreed that its supervisory personnel would not harass employees and that it would allow employees to have mine committeemen when they requested them, are disputes over which the parties are contractually bound to arbitrate.

26. That the present grievance set forth in the Second Supplemental Complaint and the defenses raised thereto, nor none of the other grievances were national in character and plaintiff is and was willing to submit such grievances to the Grievance Procedure or Settlement of Health and Safety Disputes or Discharge Procedure of the National Contract, whichever is applicable.

27. That all of the strikes and work stoppages were over grievances which defendant was bound to arbitrate, particularly those in which injunctive relief was granted, and that in such instances the deci-

sion of the umpire, panel umpire, or the Arbitration Review Board, as the case may be, is final and binding on plaintiff and defendant.

28. That defendant is responsible for the mass action of its members in engaging in strikes and work stoppages, particularly in view of the fact that defendant's officers do not work during strikes and work stoppages; do not change clothes to go to work during strikes and work stoppages; and permit members of the union to vote on whether or not to return to work over a strike or work stoppage in violation of the contract.

29. Plaintiff has lost and will continue to lose its daily production of coal if said pattern of strikes and work stoppages continue; that plaintiff's damages cannot be calculated with certainty; that plaintiff will suffer more from the denial of a permanent injunction than defendant will suffer from the granting of such a permanent injunction in that plaintiff will continue to lose it daily coal production and will be compelled to continue to spend considerable sums of money per day for the employment of supervisory personnel and for maintenance of its equipment without obtaining full production and that defendant has an adequate remedy through the Grievance Procedure by pursuing its claim and if it prevails, the impartial umpire can fashion an adequate remedy.

30. If defendant continues to engage in strikes and work stoppages plaintiff will suffer irreparable injury; that its damages cannot be calculated with certainty and that it does not have an adequate remedy at law.

31. That breaches of said Contract have occurred and will continue to occur unless defendant, Local 1670, is permanently enjoined and restrained from striking over arbitrable grievances.

32. Plaintiff has at all times been and still is willing to follow the Settlement of Disputes or Settlement of Health and Safety Disputes Procedures, as the case may be, and that as a condition to obtaining injunc-

tive relief the plaintiff should be ordered to process said grievance through the Settlement of Disputes or the Settlement of Health and Safety Disputes Procedures, or Discharge Procedure of the Contract, as the case may be, including final and binding arbitration.

33. That a permanent injunction is appropriate in this case despite the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq.

## II

## CONCLUSIONS OF LAW

1. This court has jurisdiction of this matter pursuant to 29 U.S.C. § 301(a) and 28 U.S.C. § 1331.

█ 2. The strike and work stoppage and refusal to work at plaintiff's mine involving Dennis Eggemeyer was a dispute which plaintiff and defendant are contractually obligated to resolve under the Grievance Procedure provisions of the Contract. *Gateway Coal Company v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Blue Diamond Coal Company v. United Mine Workers of America*, 436 F.2d 551 (C.A. 6, 1970), cert. denied, 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863, 65 L.C. ¶ 11,677 (1971); *Lewis v. Benedict Coal Corporation*, 259 F.2d 346 (C.A. 6, 1958), affirmed on this issue, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1959) and *Local 174 etc. v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), and *Old Ben Coal Corporation v. Local Union 1487 United Mine Workers of America*, 457 F.2d 162 (C.A. 7, 1972).

3. That this cause is one in which an injunction would be appropriate despite the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. *Gateway Coal Company v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Boys Market v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Old Ben Coal Corporation v. Local 1487 United Mine Workers of America*, 500 F.2d 950 (C.A. 7, 1974); *Old Ben Coal Corporation v. Local Union 1487*

*United Mine Workers of America*, 457 F.2d 162 (C.A. 7, 1972) and *Inland Steel Company v. United Mine Workers of America*, 505 F.2d 293 (C.A. 7, 1974).

4. That plaintiff should be ordered to arbitrate the Dennis Eggemeyer grievance involved in this matter.

5. That a strike or work stoppage over the Dennis Eggemeyer grievance causes irreparable injury to plaintiff.

█ 6. That the strikes and work stoppages that have occurred at plaintiff's River King Underground Mine in St. Clair County, Illinois arose out of local disputes or differences or health and safety problems or discharges or interpretation of the contract, all of the kind which the parties were contractually bound to settle under the Settlement of Disputes Procedure or Settlement of Health and Safety Disputes Procedure or Discharge Procedure of the National Bituminous Coal Wage Agreements of 1971 and 1974 and that said strikes constituted a breach of contract by defendant.

7. That plaintiff will suffer more from the denial of an injunction than defendant will suffer by the granting of an injunction in that defendant has a practicable means of pressing its claims by pursuing them through the Grievance Procedure if a permanent injunction is granted and plaintiff has no adequate remedy at law if a permanent injunction is not granted.

8. That strikes and work stoppages in violation of said Settlement of Disputes or Settlement of Health and Safety Disputes procedures have occurred and as a result of the pattern established by Local 1670 are and will continue to occur in breach of said Contract.

9. That in *Old Ben Coal Company v. Local Union No. 1487 United Mine Workers of America*, 457 F.2d 162 (C.A. 7, District March 16, 1972, rehearing heard April 14, 1972) the Court said (l. c. 165).

Were it not for the cautious approach which the existence of the Norris-La-Guardia Act requires in the area, a broad

injunction, making contempt remedies available as to further similar instances, may well have been within the sound discretion of the court. Perhaps a broad injunction would be appropriate in some future action should it appear that the Union is unwilling to accept the present adjudication with respect to its rights. In the present case, however, we think the policy of Norris-LaGuardia requires that the injunction should have been limited to the dispute before the court.

Subsequently, the Court of Appeals in *Old Ben Coal Company v. Local Union 1487, United Mine Workers of America*, 500 F.2d 950 (C.A. 7, 1974) granted an injunction enjoining the defendant therein from future strikes and work stoppages.

10. Defendant has engaged in repeated violations of the National Bituminous Coal Wage Agreement of 1974, and has been held in contempt and fined over its actions.

11. That defendant is responsible for the mass action of its members in engaging in strikes and work stoppages, particularly in view of the fact that defendant's officers do not work during strikes and work stoppages; do not change clothes to go to work during strikes and work stoppages and permit members of the union to vote on whether or not they should return to work over an illegal strike or work stoppage, or whether said illegal strike or work stoppage should continue. *U. S. v. International Union, UMWA*, 77 F.Supp. 563 (D.C.D.C.1948), affirmed, 85 U.S.App.D.C. 149, 177 F.2d 29 (1948), cert. denied, 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535 (1949); *Wagner Electric Company v. Local 1104, International Union of Electrical, Radio, and Machine Workers*, 361 F.Supp. 647 (D.C.Mo.1973), affirmed, 496 F.2d 954 (C.A. 8, 1974), and *Eazor Express, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 520 F.2d 951 (C.A. 3, 1975).

12. That in view of the repeated strikes in violation of the Contract, the court is of the opinion that unless a permanent injunction is issued, such strikes will continue and that a permanent injunction is appropriate despite the provisions of the Norris-La-Guardia Act, 29 U.S.C.A. § 104 et seq. *Old Ben Coal Corporation v. Local Union 1487 United Mine Workers of America*, 457 F.2d 162 (C.A. 7, 1972) and *Old Ben Coal Corporation v. Local Union 1487 United Mine Workers of America*, 500 F.2d 950 (C.A. 7, 1974).

13. That the claims that defendant had the right to strike because of the alleged agreement over the harassment of employees or the alleged agreement because of the failure to furnish Dennis Eggemeyer with a mine committeeman, are disputes which defendant was bound to arbitrate, and it is for the arbitrator to determine whether there is any merit in said disputes. *Local 103 of the International Union of Electrical, Radio and Machine Workers, AFL–CIO v. RCA Corporation*, 516 F.2d 1336 (C.A. 3, 1975) and *United Electrical, Radio and Machine Workers of America, Local 1114 v. Honeywell, Inc.*, 522 F.2d 1221 (C.A. 7, 1975).

14. That the claim that plaintiff denied Dennis Eggemeyer a mine committeeman to represent him is violative of Section 8(a)(1) of the Labor Management Relations Act, 29 U.S.C. § 158(a)(1) does not give defendant the right to strike in violation of said Grievance Procedure. *Steelworkers v. NLRB*, 91 LRRM 2275, 530 F.2d 266 (C.A. 3, 1976) and *Arlan's Department Store of Michigan, Inc.*, 133 NLRB 802, 48 LRRM 1731 (1961).

15. The defendant has not demonstrated that plaintiff did not come into court with clean hands because of the alleged harassment of Dennis Eggemeyer and the failure to furnish him a mine committeeman because no disciplinary action was contemplated nor taken against Dennis Eggemeyer at any time prior to the strike, even though two shifts of employees had worked after the Dennis Eggemeyer incident and defendant's obligation was to follow the Grievance Procedure in that the dispute was not of such a character as to relieve defendant of its obligation to follow said Grievance Procedure. *United Electrical Radio and Machine Workers of America,*

*Local 1114 v. Honeywell, Inc.*, 522 F.2d 1221 (C.A. 7, 1975) and *Steelworkers v. NLRB*, 530 F.2d 266, 91 LRRM 2275 (C.A. 3, 1976).

16. The plaintiff as a condition to this Permanent Injunction be and it is hereby ordered to submit all arbitrable disputes to the Grievance Procedure or the Settlement of Health and Safety Disputes Procedures or Discharge Procedure of the Contract, whichever is appropriate.

15. That a Permanent Injunction be issued in accordance with the Permanent Injunction filed simultaneously with these Findings of Fact and Conclusions of Law.