TRIANGLE–PWC, INC., a subsidiary of Triangle Industries, Inc., a corporation of the State of Delaware, Plaintiff,

v.

LOCAL UNION 1051 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, an unincorporated association; Arvil Gorby, President of said Local Union; Glenn S. Goddard, Vice President of said Local Union; Frank Crow, Jr., Business Manager of said Local Union; Charles S. Meyers, Secretary of said Local Union; and Floyd D. Thomas, Shop Steward of said Local Union, Defendants.

Civ. A. No. 81–0056–E.

United States District Court, N. D. West Virginia, Elkins Division.

Aug. 3, 1982.

process, and the plaintiff-appellant's request therefor is accordingly denied.

Grotta, Glassman & Hoffman, Roseland, N. J., Bachmann, Hess, Bachmann & Garden, Wheeling, W. Va., for plaintiff.

Donald G. Logston, Charleston, W. Va., for defendants.

## ORDER

MAXWELL, Chief Judge.

Plaintiff's Glen Dale, West Virginia, plant engages in the manufacturing of galvanized conduit, galvanized strip steel, and electroplated, thin wall pipe. This civil action was filed March 16, 1981, following an unauthorized work stoppage, allegedly in violation of a "no strike" clause in a collective bargaining agreement. Although that particular production disruption ceased with employees returning to work on or about March 15, Plaintiff seeks prospective injunctive relief, and so the matter has remained on the docket of the Court for the development of the issues raised by the parties.

Specifically, Plaintiff seeks an injunction broadly prohibiting strikes that involve all future arbitrable grievances. A hearing was held and the parties have submitted memoranda on the issue of whether the Court is empowered to grant prospective relief such as is sought by Plaintiff.

The issues leading to the March, 1981, work stoppage appear to be:

(1) Absentee warnings issued to employees when such employees believed they had a right to personal leave days.

(2) Overtime scheduling problems, particularly on weekends.

(3) Problems with processing retirement benefits for certain workers.

(4) "Pyramiding" of work in the cable department.

(5) Failure of management to send the union manager safety reports.

(6) General harassment by supervisors.

Although the present collective bargaining agreement between Plaintiff and Defendant has only been in effect since June, 1980, Plaintiff cites five previous production disruptions to show Union disregard of a "no strike" clause in the contract. The dates and issues involved are:

(1) February, 1976—work assignments.

(2) April, 1977—manning requirements.

(3) September, 1979—work assignment.

(4) October, 1979—employee discharge.

(5) September, 1980—safety requirements, job descriptions.

In addition, Plaintiff appeared before the Court on October 13, 1981, and presented a verified complaint with supporting affidavits claiming that yet another work stoppage had occurred beginning on October 12, 1981. Apparently, the most recent work stoppage was due to a job reduction on the rigid kettle operation at Plaintiff's plant.

The present state of the law on prospective injunctions by federal courts in labor disputes flows from the 1970 decision of the United States Supreme Court, *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets*, the Supreme Court reconciled the apparent contradiction between § 4 of the Norris-LaGuardia Act (29 U.S.C. § 104, federal courts are without jurisdiction to enjoin strikes except in cases of fraud or violence) and § 301 of the Taft-Hartley Act (29 U.S.C. § 185, granting federal courts jurisdiction over disputes arising out of collective bargaining agreements). *Boys Markets* provides an exception to the Norris-LaGuardia Act ban on injunctions when certain criteria are present. *Id.* at 253–254, 90 S.Ct. at 1593–94.

Since *Boys Markets*, Circuit Courts of Appeals have treated the viability of prospective relief in labor disputes somewhat differently. *Compare Old Ben Coal Corp. v. Local U. No. 1487 United Mine Workers* (Old Ben II), 500 F.2d 950 (7th Cir. 1974) and *United States Steel Corp. v. United Mine Workers of America*, 519 F.2d 1236 (5th Cir. 1975), *cert. denied*, 428 U.S. 910, 96

S.Ct. 3221, 49 L.Ed.2d 1217 (1976). Several circuits, including the Fourth Circuit Court of Appeals, have not yet spoken on this area of labor law. If there is a common ground among the various Circuit Court decisions, it is that when prospective relief is warranted, the injunction should be limited to the issues causing the current controversy only, thus avoiding overly broad relief. *Latas Libby's Inc. v. United Steelworkers*, 609 F.2d 25, 31 (1st Cir. 1979).

The history of unauthorized work stoppages involving the parties to this action, according to Plaintiff, includes seven separate incidents of production disruption, in alleged violation of a "no strike" clause in a bargaining agreement, over a six-year period.

This record, though indicative of chronic labor problems, does not warrant under the present state of the law the broad prospective relief requested by Plaintiff. *See U.S. Steel Corp. v. United Mine Workers of America*, 534 F.2d 1063 (3rd Cir. 1976) (prospective relief might be appropriate where district court found there were seven work stoppages within 12 months) and *Old Ben II, supra* (prospective relief granted where there were 11 work stoppages between the time the 1971 National Bituminous Coal Wage Agreement went into effect and October 19, 1972. Additionally, there was a longer history of labor trouble before 1971).

There are two other incentives that causes the Court to be inclined to believe the law requires a denial of the sought after broad relief at this juncture. Both relate to the variety of causes for the labor discontent at Plaintiff's plant. The union apparently has caused work stoppages because of a wide range of issues: work assignments; manning requirements, discharges, safety requirements, job descriptions, overtime scheduling, work "pyramiding," etc. As Plaintiff has stated in a memorandum submitted to this Court, "The broader the range of past union violations, the more difficult it becomes to frame specific violations of conduct. Based on the variety of the union's past illegal activities, the grounds for future strikes cannot be adequately forecast and the past violations cannot be reasonably categorized."

First, the *Boys Markets* exception to prohibitions against federal court injunctions in labor cases necessarily requires an ad hoc adjudication of whether the underlying dispute is subject to the grievance and arbitration procedure set forth in the bargaining agreement in question. *Boys Markets, supra* at 254. A broad prospective injunction, such as is requested by Plaintiff, precludes such case-by-case analysis. *U.S. Steel Corp.*, 534 F.2d at 1075.

Second, labor disputes frequently suggest a distinction between a union/company history of frequent strikes over a wide range of arbitrable issues and frequent strikes over one issue or a narrow category of arbitrable issues. Note, *Prospective Boys Markets Injunctions*, 90 Harv.L.Rev. 790 (1977). The writer sees the former as an expression of general discontent (be it with the union, the management, or the grievance process). In the situation of broad issues fomenting strikes, there is less need for broad injunctive relief since there is little danger that the company will capitulate and the arbitral process is secure without judicial intervention. In the latter situation, however, the pattern of strikes involving a narrow category of issues suggests that management might capitulate before arbitration can be completed and the need for a prospective injunction prohibiting walkouts would be more justified. *Id.* at 801–803. *See Bituminous Coal Operators' v. International U.*, 585 F.2d 586 (3rd Cir. 1978) (chronic striking found repetitious of previously adjudicated disputes).

Finally, it should be noted that the Court is not unmindful of the need to protect the interests of Defendants. *See generally, Washington-Baltimore Newspaper v. Washington Post*, 626 F.2d 1029, 1031 (D.C.Cir. 1980).

The facts discussed in this Order were, for the most part, gleaned from the allegations of Plaintiff, and were not tested by the process of an evidentiary hearing. Even given the untested history of work stoppages presented, however, the Court is

of the opinion that ad hoc temporary restraining orders and other injunctive relief short of the broad prospective type urged here is more appropriate. For the foregoing reasons, it is

ORDERED that the broad prospective relief sought by Plaintiff is DENIED, and the civil action is dismissed and retired from the docket of this Court.